Our final case for today is Gloria Fields v. Board of Education of the City of Chicago. Mr. Kamin. Good afternoon, Your Honors. Ms. Fields approved all the elements of the federal cases. I'm really not sure why the summary judgment was granted. I mean, proved, meaning she offered evidence. There was considerably more evidence in the 26A1s, but that didn't get explored. Mr. Kamin, what are you arguing is the adverse action here? Oh, the adverse action is that the principal basically bullied Ms. Fields out of her job. So constructive discharge? So I think the best term for that is constructive discharge, and that's what I've been arguing. The standards for constructive discharge are quite rigorous, and it's hard to see what is going on that makes life at the school intolerable for her. It has to be worse than workplace harassment. Well, I mean, it was workplace harassment, and actually that continued, but that wasn't irrelevant. I mean, that's not what's relevant. It's just harassment. We're talking that it started with pre-hearing notices, which said, hey, you've got to talk to me, and then they escalate. But then the things seemed to get resolved, maybe not quite where she wanted them, but they seemed to get resolved after the mediation where the principal doesn't insist on a recommendation for firing her, and she doesn't actually receive any discipline. Right, well, she receives minor, I think it was one of the charges was sustained. One charge, but that was, I mean, there was one that had largely been resolved anyway in the past. So the thing is, you get up to the point of this mediation, which is in January 2016, as I remember, and she basically prevails. In fact, you emphasize in your brief, she prevails on a lot, and she can go forward. I mean, it may be an unpleasant environment. I'm sure it was, but that's not the same as constructive discharge. The principal's trying to get her fired. He claims that he's not. Well, that's right. These pre-hearing notices that she's receiving. It's what's on these performance improvement plans. I understand that. Well, they lead to the performance improvement plan, but they're saying you can get fired. They're saying as a result of this meeting, you can get fired. But she wasn't, and she went forward with the mediation, and the mediator recommended no discipline, and they agreed and did not discipline her. So how can that be an intolerable work environment? Well, this sounds like one of my malicious prosecution cases where you charge somebody and they win, but that doesn't mean that they haven't suffered a lot in the year leading up to it where they don't know what they're going to get. For a constructive discharge claim, there has to be evidence or to raise an issue of fact at the summary judgment stage here. There has to be evidence that her work conditions were so intolerable or would have been unbearable to a reasonable person. So what's the evidence that supports that unbearable or intolerable working condition? Well, the evidence is what has been provided. I mean, the fact that she had to go through a hearing where she could easily be fired. So the hearing itself is what you think made it so intolerable? Well, I think what made itóI mean, it led up to that, and there wasn't anyóI mean, and then she goes and she sees therapists who say, hey, don't return to that situation. You've suffered a lot under this. It's led up to trying to get you fired, and as a result of the hearing, it could easily be that she was fired. And, in fact, the other side, the Board of Education, they offered her leavingóoffered her to just resign rather than be fired, and that way maybe get a job with a private school. But then, I mean, so she's looking at serious threats. She's fortunate enough to getóto not be fired because she's got a bully who's right on heró who's going to try to get her fired, and she knows he's going to try to get her fired, and she's already receiving letters saying, hey, we can fire you as a result of this later. He's got the discretion to do it. So could you also talk for a little bit about what evidence is in this record to link any protected characteristic of hers, her race, her age, to this adverse action? The best causal link is that there was one other woman about the same age, a black woman, who was the same way, was sort of pushed out at about the same time. That was the only person who was pushed out, only teacher, that the non-African-American teachers didn't receive the pre-hearing notices and the mediation. And did they have the same performance issues? The otheróthe person who was similar to my client had the same situation. The performance issues, I mean, that's an issue right there. Well, I mean, the thing is, if the schools, if first the principal is criticizing only people of one category, only people of one race, for example, and yet there are people of the other race with the same criticisms of their classroom performance, the lesson plans are too long, you're not controlling the class, whatever the criticisms were, then you would worry about it, because you would say, well, why is it a problem only for the people of one race? But if everybody's getting roughly the same thing, or if those criticisms don't exist for others, then you have a much harder time finding any link to the protected characteristic. There may have been an issue, but as I said, in the 26A1s, there were a lot of witnesses that the Board of Education decided not to depose, who I believe would have easily met that inference, but there already was evidence on the record of that, of there being a problem. But in terms of actual proof at trial, that's why I'm mentioning the 26A1s, because there were a lot of people whoóI mean, I don't know how many people we had, 20 people or something who were involved in the school and involved in that education system and knew about that, including the former principals themselves, who, I mean, they understood what was happening in evaluating performance. There were, I mean, the errors or violations that my client made, or allegedly made, lack of performance, that would be something for the jury to say, is that what a teacher is supposed to do, or is a teacher supposed to have her students in the 95th percentile, she's got all these people who are going to say she's doing an excellent job, or did an excellent job, versus relatively trivial errors that the principaló well, he's a former principal now, but the principal was saying that she was makingó a jury is going to say, is thatówhat is a teacher supposed to do? Is it heróis she meeting the legitimateóthe expectations of the employer, which is the Board of Education, is she meeting it by being this excellent teacher who historically has been considered an excellent teacher? So I believe that ifóI mean, if that had gone to trial, then thereó I mean, it would have been clear that the other step was basicallyó was just a pretext to get rid of this woman with characteristics he didn't like. And the evidence there would be that there was another woman with those characteristics who he also got rid of and didn't like. Okay. Well, if you want to save a little rebuttaló I do. I'm sorry. It's a good time to do it. Thank you. All right. Ms. Coles. May it please the Court, Catherine Coles on behalf of the Board of Education for the City of Chicago. The Board respectfully requests this Court to affirm the District Court's opinion in its entirety. The District Court properly ruled on the defendant's motion for summary judgment. The District Court properly ruled that no reasonable jury could find for the plaintiff on either of her counts. Count 1 is an age-sex discrimination case, and Count 2 is for retaliation. Here, there was no adverse employment action, and this is fatal to both of her claims. A prerequisite for retaliation and age-discrimination claims is an adverse employment action. Adverse employment actions would includeó and I believe the plaintiff is arguing hereó that it's constructive discharge. Well, here there is no constructive discharge. This was age and race, not age and sex. Oh, I apologize. Yes. So there's two ways for there to be constructive discharge. Either a hostile work environment, or if the person leaves right before, quote, the axe is about to fall, that they know they're about to be terminated. And why isn't this the second kind of case? I don't see the environment, but she certainly is getting an awful lot of signals with these ever-descending performance ratings from this new principal, you know, after years of having positive ratings, the performance plans, you know, just this drumbeat of adverse communications from him to her. I think there's two reasons why this isn't that case. The first reason is, one, that she was not able to prove tható for both ways to get constructive discharge, you do have to prove that it's an intolerable work environment. So first, she did not prove that it was an intolerable work environment. She was in a situation where she was instructed to perform at her job, and she has not contested that the reasons that the principal gave her were phony or false. She was just being told by Principal Wyden to perform at her job, and he was just trying to ensure the quality education. Well, she doesn't concede that. I mean, that's what Principal Wyden says he was doing. But she says it's intolerable to go to work every day with the sword of Damocles hanging over your head that you may be fired at any moment. And I think the case of Sagan false addresses this, that just threats looming in the background is not enough. How about in the foreground? I mean, these were notó So by the time she has the three performance improvement plans, she's on notice that she could be fired at any time, right? That's correct. But at the end of the day, mediation does resolve in her favor. And at the time she resigns, there is no discipline looming. There is no threat that she's about to be fired. At the time she retires, it's 6 months after the mediation, or 5 months approximately after the mediation, and there's nothing pending. And I think that's where the case Chapman comes on point In the case of Chapman, this court held that an employee who was told, if you don't leave, either withdraw your EEOC complaint or leave, and then the next day the employee does not come to work, and the employer reaches out and says, Hey, why aren't you at work? We want you to be here. Or the employer continues to say, We want you to be at work. That was not, again, enough for constructive discharge. And I think that's pretty on point to this case. But where's the record that anything like that was coming from the principal? I mean, as you say, she largely prevails in the mediation. But by that time, she's just damaged by all of this pressure that's been on her. So that's when she takes the FMLA leave, right? She doesn't really come back after the mediation. But at that time, again, she prevailed at the mediation. There's no discipline pending at the time she retires. She's a union-protected employee. There's no indication that she's about to be terminated. Is there any evidence that somebody contacted her to tell her to come back from the union or otherwise? No, there isn't. And, again, at the time she retired, I don't think there's any evidence that this workplace situation was intolerable. It's an objective standard. While it subjectively may have been intolerable to her, looking at it from an objective standard from a reasonable employee, I do not believe the situation was intolerable. I mean, but the only retirement terms they offered her before all of this would have included, you know, a giant black mark on her record, you know, do not hire, don't hire as a substitute, don't hire in any other CPS school, you know, just a complete severance. So that's another, I mean, it's just another element of what this environment looks like to her. Correct. But objectively, she, again, Principal Biden was just trying to improve the school and ensure the quality education of the students. And I don't think any reasonable employee would find the plaintiff's work conditions so unbearable that they would have to resign. And the possibility of discipline is not an adverse employment action. And additionally, the plaintiff's claim for discrimination fails for another reason. The plaintiff waived any argument that Wyden's actions were pretextual. The plaintiff didn't argue this in her opening brief and didn't argue it at reply. What about the link between what happened to her and either her race or her age? I don't believe there's a link there either. I believe Principal Wyden's, it's clear from the record that Principal Wyden's actions were purely based on the plaintiff's actions and that the plaintiff failed to notify supervisors she'd be absent from a mandatory meeting, that she failed to attend a meeting, or excuse me, a training directed by Wyden, and that she failed to submit field trip documentation on time, and that she failed to provide notice of sick days. So do you have evidence of people who are not in those protected categories, people of different races, people under the age of 40, who received similar discipline, something that would suggest this is all even-handed? So I would refer the court to pages five through nine of the brief, where we list quite thoroughly all the other comparators and how that the plaintiff was not able to establish that anyone, she didn't provide any evidence that anyone was treated differently and she didn't provide any evidence that she was singled out in some way. And it's overwhelmingly clear that the plaintiff was disciplined because Principal Wyden was just trying to improve the school and provide quality education to the Edgeworth students. He wasn't singling out the plaintiff. He was doing this throughout the school. There's not an element of just race or age discrimination here, and the plaintiff has no evidence of it. Ultimately, I think this is a straightforward case. The district court properly concluded the plaintiff suffered no adverse employment action, and for these reasons, the board would respectfully request this court to affirm the district court's opinion in its entirety. Unless there's any further questions, I would rest on my briefs. All right. Thank you. Anything further, Mr. Kamen? Very briefly. First, for adverse employment action, since that's really what this is about, there's a case I just found, EEOC v. Costco, which was from here, from this court in 2014, which is directly the same facts. The person was traumatized, didn't come back to work. That was an adverse employment action. I don't know if they describe it as a constructive discharge, but it's basically that they were making the same point that if you reasonably feel that you can't go back to work or that it's an intolerable situation. If that's the case I'm thinking of, that was pretty severe harassment and stalking that drove that plaintiff out of the workplace. Right. That's what upset her. That's definitely what upset her. Here, we have a similar situation. It upset her so much, the idea that she would be fired, going from this great teacher to solely being someone who's borderline and they're trying to get rid of. She went to see therapists professionally, two different ones, who came up with a diagnosis of situational anxiety. She shouldn't go back to the same situation. They didn't say she shouldn't go back to work. They just said, basically, if Whedon's still principal, you shouldn't be back there. That's what happened before she retired. Of course, retirement looks better than being fired any minute you go back. That's the only part that was voluntary, was protecting her. Okay. Thank you very much, Ben. Thanks to both counsel. We will take the case under advisement.